UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V. SONNY SONIA,<br><br>                    Plaintiff,<br><br>          v.<br><br>CALIFORNIA HIGHWAY PATROL, et al.,<br><br>                    Defendants. | No. 2:14-cv-2975-JAM-KJN PS<br><br><br>ORDER |

Presently before the court is defendant Nathan Osborn's ("Officer Osborn") motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 17.)  Plaintiff filed an opposition and Officer Osborn filed a reply.  (ECF Nos. 19, 21.)  The court heard this matter on its September 3, 2015 law and motion calendar. Plaintiff appeared telephonically on her own behalf.  Attorney Catherine Woodbridge Guess appeared on behalf of defendant Osborn.  The undersigned has fully considered the parties' briefs, the parties' oral arguments, and appropriate portions of the record.  For the reasons that follow, the motion to dismiss is granted, but with leave to amend.

////

////

////

1

1  I.      Relevant Allegations of the First Amended Complaint

2          Plaintiff alleges that on January 20, 2013, she was driving a vehicle with her two sisters

3  along Highway 50 from Oakland, California to the Red Hawk Casino in Placerville, California.

4  (ECF No. 13 at 3.)  When she approached the exit ramp to the Red Hawk Casino Parkway Bridge,

5  plaintiff passed a California Highway Patrol cruiser parked on the side of the road and noticed

6  Officer Osborn sit up in the car, grab the steering wheel, and begin to pull forward.  (Id. at 5.)  At

7  that same time, plaintiff witnessed a vehicle several cars in front of her suddenly decelerate,

8  nearly causing a multiple-car collision.  (Id. at 6.)  Despite witnessing this incident, Officer

9  Osborne activated his cruiser's lights and began to pursue plaintiff.  (Id.)  Plaintiff immediately

10  pulled her vehicle off to the side of the road in response.  (Id. at 6-7.)  Officer Osborn then

11  approached the passenger side of plaintiff's vehicle and began to question plaintiff.  (Id. at 7.)

12  During this questioning, Officer Osborn advised plaintiff that he had stopped her "because she

13  was driving ninety-one (91) miles per hour, in a sixty-five (65) mile per hour speed zone" but that

14  he would "give [her] a break on speed."  (Id.)  The traffic stop lasted roughly 20 minutes and

15  plaintiff was ultimately released with a citation for a violation of California Vehicle Code §

16  22349 for "traveling '65+' in a sixty-five (65) mile per hour speed zone."  (Id.)  Plaintiff alleges

17  that Officer Osborn's claim that he stopped and cited plaintiff for speeding was pre-textual and

18  that his actual reason for doing so was racially-motivated because plaintiff is a female of both

19  African American and Native American descent and was not exceeding the speed limit prior to

20  the stop because she was decelerating to take the exit to the Red Hawk Casino.  (Id.)  In essence,

21  plaintiff alleges that Officer Osborn stopped and cited her solely because she was "Driving While

22  Black."  (Id.)

23          Plaintiff further alleges that the stop was conducted pursuant to a California Highway

24  Patrol ("CHP") "sanctioned 'racial profiling drag net' operation."  (Id. at 3.)  Plaintiff alleges that

25  she is aware of four other racially-motivated stops conducted by Officer Osborn that also took

26  place on the same section of Highway on January 20, 2013.  (Id. at 8.)  She also alleges that she

27  anticipates traveling along that section of Highway 50 in the future and "has a valid and

28  reasonable fear that she will be stopped by the CHP again in the future, solely on the basis of her

2

1    race, gender and ethnicity." (Id.)  With regard to defendant Joseph Farrow ("Commissioner

2    Farrow"), plaintiff alleges that he acted in his official capacity as the CHP's commissioner to

3    promulgate racially discriminatory programs and procedures, including "drug interdiction

4    methods employed by the CHP that have a discriminatory impact on motorists of color traveling

5    through California, including [plaintiff]." (Id. at 2, 10.)

6        Plaintiff also contends that defendants falsified evidence by tampering with the video

7    footage contained on a DVD provided to plaintiff by the CHP in response to a public information

8    request she submitted that defendants alleged depicted the video captured by a camera system in

9    Officer Osborn's patrol car for the 24-hour period surrounding the alleged stop of plaintiff's

10   vehicle on January 20, 2013.  (Id. at 17-21.)  Plaintiff alleges that the video she was provided

11   failed to accurately depict the events of the stop and was "manufactured and otherwise

12   manipulated to distort the truth about the unlawful, racially motivated and discriminatory traffic

13   stop initiated against Plaintiff by Officer Osborn." (Id. at 19-20.)  Finally, plaintiff alleges that

14   Officer Osborn committed perjury by submitting "an affidavit or criminal complaint" that

15   "falsified the facts and circumstances" of the stop involving plaintiff.  (Id. at 17.)

16       Based on these allegations, plaintiff asserts 16 causes of action, consisting of both federal-

17   law and California state-law claims.  With regard to her claims under federal law, plaintiff asserts

18   the following claims under 42 U.S.C. § 1983:  (1) violations Title VI of the Civil Rights Act of

19   1964 and 28 C.F.R. §§ 42.101 et seq. for racial discrimination in a federally-funded program

20   against CHP and Commissioner Farrow (claims 1 and 2); (2) violations of the Fourteenth

21   Amendment's Equal Protection Clause against all defendants in their official and individual

22   capacities except CHP (claim 3); (3) violations of the Fourth Amendment's guarantee against

23   unreasonable searches and seizures against all defendants in their official and individual

24   capacities except CHP (claim 4); and (4) violations of plaintiff's right to interstate travel in

25   violation of the federal Constitution's Commerce Clause, Privileges and Immunities Clause, and

26   the Fourteenth Amendment against all defendants in their official and individual capacities except

27   CHP (claim 5).  Plaintiff also asserts federal claims under 42 U.S.C. §§ 1981, 1986 against all

28   defendants in their official and individual capacities except CHP (claims 6 and 7).  Plaintiff

1  further asserts the following state-law claims against all defendants except CHP:  (1) violations of

2  California Government Code §§ 1115, 11139 (claim 8); (2) violations of Article 1, sections 7 and

3  13 of the California Constitution (claims 9 and 10); (3) violations of California Civil Code §

4  52.1(b) (claim 11); (4) intentional infliction of emotional distress (claim 12); negligent infliction

5  of emotional distress (claim 13); (5) false imprisonment (claim 14); and (6) perjury (claim 15).

6  Finally, plaintiff alleges that all defendants falsified police records and tampered and otherwise

7  manipulated evidence in violation of state law (claim 16).

8  II.       Legal Standards for Motion to Dismiss

9           1.    *Rule 12(b)(1) Standards*

10          Federal Rules of Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of

11  subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  Federal courts are courts of limited

12  jurisdiction.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978); K2 Am. Corp. v.

13  Roland Oil & Gas, 653 F.3d 1024, 1027 (9th Cir. 2011).  "It is presumed that a cause lies outside

14  this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

15  jurisdiction."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); K2 Am., 653 F.3d

16  at 1027.

17          Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the

18  allegations in the complaint, or factual, where the court is permitted to look beyond the complaint

19  to extrinsic evidence.[1]  See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014); Safe Air For

20  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  When a defendant makes a factual

21  challenge "by presenting affidavits or other evidence properly brought before the court, the party

22  opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of

23  establishing subject matter jurisdiction."  Safe Air, 373 F.3d at 1039; see also Leite, 749 F.3d at

24  1121.  The court need not presume the truthfulness of the plaintiff's allegations under a factual

25  attack.  Wood v. City of San Diego, 678 F.3d 1075, 1083 n. 2 (9th Cir. 2011); Safe Air, 373 F.3d

26

27  _____

    [1] As discussed below, Officer Osborn has submitted, and the court has considered, extrinsic
28  evidence in the form of the documents for which he seeks judicial notice.  Thus, Officer Osborn is
    mounting a "factual attack" to subject matter jurisdiction.  See Leite, 749 F.3d at 1121.

1 at 1039.  The plaintiff must show by a preponderance of the evidence each requirement for

2 subject-matter jurisdiction, and as long as the dispute is not intertwined with an element of the

3 plaintiff's causes of action, the court may resolve any factual disputes itself.  See Leite, 749 F.3d

4 at 1121, n.3; Safe Air, 373 F.3d at 1039-40.

5         2.     *Rule 12(b)(6) Standards*

6      A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

7 challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

8 Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

9 of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

10 plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

11 also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

12 a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

13 is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

14 Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

15 factual content that allows the court to draw the reasonable inference that the defendant is liable

16 for the misconduct alleged."  Id.

17      In considering a motion to dismiss for failure to state a claim, the court accepts all of the

18 facts alleged in the complaint as true and construes them in the light most favorable to the

19 plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

20 however, required to accept as true conclusory allegations that are contradicted by documents

21 referred to in the complaint, and [the court does] not necessarily assume the truth of legal

22 conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

23 1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

24 prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

25 to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

26 Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

27 Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

28 particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

1   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

2   evaluating them under the standard announced in Iqbal).

3          In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

4   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

5   matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506

6   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

7   consider a memorandum in opposition to a defendant's motion to dismiss to determine the

8   propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

9   1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

10  whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

11  2003).

12  III.    Request for Judicial Notice

13         As an initial matter, Officer Osborn requests the court to take judicial notice of plaintiff's

14  original complaint filed in this action and a "case print" of the docket in the El Dorado County

15  Superior Court case People v. Sonia, Case No. 03673QKVS.

16         A judicially noticed fact must be one not subject to reasonable dispute in that it is either

17  (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate

18  and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

19  Fed. R. Evid. 201(b) (1984).  "A court shall take judicial notice if requested by a party and

20  supplied with the necessary information."  Fed. R. Evid. 201(d) (1984).  Judicially noticed facts

21  often consist of matters of public record, such as prior court proceedings, see, e.g., Emrich v.

22  Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988); administrative materials, see, e.g.,

23  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); or other court documents, see, e.g.,

24  Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as

25  a public record).  Federal courts may "take notice of proceedings in other courts, both within and

26  without the federal judicial system, if those proceedings have a direct relation to the matters at

27  issue."  U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th

28  Cir. 1992).

Generally, a court may not consider material beyond the complaint in ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  "However, '[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'"  Intri-Plex Technologies, Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting Lee, 250 F.3d at 689 (citation omitted)); see also United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).

The court grants Officer Osborn's request for judicial notice with respect to both documents.  It is proper for the court to take judicial notice of court records in the present case, such as plaintiff's original complaint, and in related actions in other courts, such as the docket in the state court action.  See Coats v. McDonald, 2010 WL 2991716, at *2 (E.D. Cal. July 29, 2010) (noting "[a] court may take judicial notice of court records" and taking judicial notice of the plaintiff's original complaint); Emrich, 846 F.2d at 1198; MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).  Furthermore, plaintiff does not genuinely dispute the facts Officer Osborn seeks to judicially notice.  Accordingly, judicial notice of both documents is proper.

IV.    Discussion

1.    *Rooker-Feldman*

First, Officer Osborn claims that the court lacks jurisdiction over any of the plaintiff's claims asserted against him under the *Rooker-Feldman* doctrine.  This argument is well taken.

The *Rooker-Feldman* doctrine occupies "narrow ground."  Skinner v. Switzer, 562 U.S. 521 (2011).  "'The *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments.'"  AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1153 (9th Cir. 2007) (quoting Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007)).  "Essentially, the doctrine bars 'state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced' from asking district courts to review and reject those judgments." Henrichs, 474 F.3d at 613 (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005));

1    accord Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (9th Cir. 2008).

2           The *Rooker-Feldman* doctrine may also apply, however, where the parties do not directly

3    contest the merits of a state court decision, but file an action that constitutes a "de facto" appeal

4    from a state court judgment.  Reusser, 525 F.3d at 859.  Such a de facto appeal exists where

5    "claims raised in the federal court action are 'inextricably intertwined' with the state court's

6    decision such that the adjudication of the federal claims would undercut the state ruling or require

7    the district court to interpret the application of state laws or procedural rules."  Id. (citation and

8    quotation marks omitted).  "Once a federal plaintiff seeks to bring a forbidden defacto appeal . . . ,

9    that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the

10   state court judicial decision from which the forbidden de facto appeal is brought."  Noel v. Hall,

11   341 F.3d 1148, 1158 (9th Cir. 2003); see also Bianchi v. Rylaarsdam, 334 F.3d 895, 900 n.4 (9th

12   Cir. 2003) ("The *Rooker-Feldman* doctrine prevents lower federal courts from exercising

13   jurisdiction over any claim that is 'inextricably intertwined' with the decision of a state court,

14   even where the party does not directly challenge the merits of the state court's decision but rather

15   brings an indirect challenge based on constitutional principles.").  "Where the district court must

16   hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to

17   both courts are inextricably intertwined."  Doe & Associates Law Offices v. Napolitano, 252 F.3d

18   1026, 1030 (9th Cir. 2001).

19          Here, although plaintiff does not specifically seek to overturn her state court conviction on

20   the speeding citation, her claims are clearly "inextricably intertwined" with that conviction

21   because a decision in this case favorable to plaintiff would necessarily require this court to make

22   determinations inconsistent with the state court's judgment regarding the existence of probable

23   cause to support Officer Osborn's stop of plaintiff's vehicle and the validity of the speeding

24   citation he issued to plaintiff.  The judicially-noticed facts show that plaintiff was convicted on

25   the speeding citation by a state trial court on April 24, 2013, and that, while an appeal of this

26   conviction is pending before a state appellate court, this conviction has not been overturned.

27   (ECF No. 17-1 at Exhibit 2.)  Because the state court found plaintiff guilty of the speeding

28   violation she was charged with in Officer Osborn's citation, it necessarily follows from this

                                                    8

1    determination that the state court also found that Officer Osborn had probable cause to initiate the

2    stop and issue plaintiff the speeding citation.  Plaintiff's claims against Officer Osborn in this

3    action would require this court to make findings contrary to these determinations made by the

4    state court.  For instance, plaintiff's claims premised on violations of the Fourth and Fourteenth

5    Amendments, the Commerce Clause, 42 U.S.C. §§ 1981, 1986, Article 1, §§ 7, 13 of the

6    California Constitution, and false imprisonment, if meritorious, would all require this court to

7    determine that Officer Osborn lacked probable cause to initiate the stop and issue the speeding

8    citation.  Accordingly, such causes of action are "inextricably intertwined" with the prior state

9    court conviction and, therefore, are barred under the *Rooker-Feldman* doctrine.  Doe &

10   Associates Law Offices, 252 F.3d at 1030.

11        2.      *Heck Abstention*

12        Second, Officer Osborn argues that the court should abstain from hearing plaintiff's

13   claims under the United States Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477

14   (1994).  Specifically, he contends that a verdict in this civil action in plaintiff's favor would

15   conflict with plaintiff's prior speeding conviction in state court, which the abstention doctrine

16   developed in Heck is intended to prevent.  This argument is meritorious.

17        Under the United States Supreme Court's holding in Heck, "a § 1983 action that would

18   call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable[.]"

19   Harvey v. Waldron, 210 F.3d 1008, 1013 (9th Cir. 2000).  Thus, when a plaintiff files a Section

20   1983 action concerning alleged conduct leading to a criminal conviction of plaintiff, courts must

21   "determine whether a judgment in favor of the plaintiff would necessarily imply the invalidity of

22   his conviction or sentence; if it would, the complaint must be dismissed[.]"  Heck, 512 U.S. at

23   487.  Conversely, "if the plaintiff's action, even if successful, will not demonstrate the invalidity

24   of any outstanding criminal judgment against the plaintiff, the action should be allowed to

25   proceed[.]"  Heck, 512 U.S. at 487.

26        Here, plaintiff's claims asserted under Section 1983, if successful, would require this court

27   to make factual findings that would imply that the state court's conviction of plaintiff on the

28   speeding citation issued by Officer Osborn was invalid.  In order to deem plaintiff's claims

1   meritorious, the court would need to determine that Officer Osborn lacked probable cause to stop

2   plaintiff and issue her the citation and that the sole reason for Officer Osborn's stop and citation

3   was race-based rather than for speeding.  Such findings would directly conflict with the state

4   court's implied determinations that Officer Osborn had probable cause to issue the citation and

5   that plaintiff was speeding when it found plaintiff guilty in her criminal action.  To make such

6   conflicting determinations would constitute a determination by this court that plaintiff's state

7   court conviction is invalid.  Accordingly, the court is barred from considering these claims under

8   Heck.[2]

9   V.      Conclusion

10          While Officer Osborn's motion to dismiss is well taken and plaintiff's claims against him,

11  as alleged, are barred under the *Rooker-Feldman* doctrine and Heck abstention, the court will

12  grant plaintiff one final opportunity to amend her complaint in light of her pro se status and

13  because it appears from the allegations of the first amended complaint at least possible that

14  plaintiff might be able to allege facts demonstrating that at least some of her claims against

15  Officer Osborn and the other named defendants are not jurisdictionally barred by these doctrines.[3]

16  However, plaintiff is cautioned that if she elects to file a second amended complaint, she must

17  articulate her claims through factual allegations that address the deficiencies outlined above.

18  More importantly, plaintiff must have a good faith basis for making such allegations.  See Fed. R.

19  Civ. P. 11(b).  If after reviewing this order, plaintiff determines that she cannot in good faith

20  allege facts that would address the deficiencies with respect to a particular claim or claims, then

21

22  [2] Furthermore, with regard to Officer Osborn's motion pursuant to Federal Rule of Civil
    Procedure 12(b)(1), plaintiff's opposition fails to even address the motion's arguments
23  concerning lack of subject matter jurisdiction under the *Rooker-Feldman* and Heck doctrines or
    otherwise demonstrate that the court has subject matter jurisdiction over her claims.  (See ECF
24  No. 19.)  Accordingly, plaintiff fails to meet her burden in opposing defendants Rule 12(b)(1)
    facial attack.  See Safe Air, 373 F.3d at 1039; Leite, 749 F.3d at 1121.
25

26  [3] The court also notes, without deciding, that at least some of plaintiff's claims asserted against
    defendants CHP and Commissioner Farrow also appear to be barred under *Rooker-Feldman* and
27  Heck for the same reasons they are barred against Officer Osborn.  While plaintiff is under no
    obligation to amend her allegations as to these defendants, it may be in her interest to also
28  consider those allegations in light of this order if she decides to file a second amended complaint.

1   she may wish to omit such claims from a future amended complaint as failure to make allegations

2   on a good faith basis may be grounds for the imposition of sanctions pursuant to Rule 11 of the

3   Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 11(c).  If plaintiff decides to file a second

4   amended complaint, it shall be captioned "Second Amended Complaint" and shall not exceed 30

5   pages, including attachments.

6          Plaintiff is informed that the court cannot refer to a prior complaint, brief, exhibits, or

7   other filings to make her second amended complaint complete.  Local Rule 220 requires that an

8   amended complaint be complete in itself without reference to any prior pleading.  Thus, once the

9   second amended complaint is filed, it supersedes the first amended complaint, which no longer

10  serves any function in the case.

11         Plaintiff is further informed that she is not required to file a second amended complaint.  If

12  plaintiff determines that she does not wish to pursue the action at this juncture or that she cannot

13  in good faith allege any facts asserting cognizable claims against defendants that are not barred,

14  she may instead file a request for voluntary dismissal of the action without prejudice pursuant to

15  Federal Rule of Civil Procedure 41(a)(1)(A)(i).

16         Based on the foregoing, IT IS HEREBY ORDERED that:

17         1.      Defendant Nathan Osborn's motion to dismiss the first amended complaint (ECF

18  No. 17) is GRANTED.

19         2.      Plaintiff's first amended complaint is dismissed, but with leave to amend.

20         3.      Within 30 days of the date of this order, plaintiff shall file either a second amended

21  complaint or a request for voluntary dismissal of the action pursuant to Federal Rule of Civil

22  Procedure 41(a)(1)(A)(i).

23         4.      Because it appears that neither defendant CHP nor Joseph Farrow have been

24  served with process or otherwise have appeared in this action to date and the fact that plaintiff's

25  first amended complaint is dismissed with leave to amend, the United States Marshal's Service is

26  directed *not* to serve process on these defendants pursuant to the court's April 9, 2015 order (ECF

27  No. 4) until directed to do so by future court order.

28  ////

1        IT IS SO ORDERED.

2    Dated:  September 4, 2015

3

4                                                KENDALL J. NEWMAN
                                                 UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28